IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


GINA M. KENNEDY,

        **Plaintiff,**

   vs.                            **Civil Action 2:14-cv-419**
                                       **Judge Sargus**
                                       **Magistrate Judge King**


**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**


**REPORT AND RECOMMENDATION**

This is an action instituted under the provisions of 42 U.S.C. §
405(g) for review of a final decision of the Commissioner of Social
Security denying plaintiff's applications for a period of disability,
disability insurance benefits, and supplemental security income.  This
matter is now before the Court on *Plaintiff Gina M. Kennedy's
Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 11, the
Commissioner's *Opposition to Plaintiff's Statement of Errors*
("*Commissioner's Response*"), Doc. No. 19, and *Plaintiff's Reply*, Doc.
No. 20.

## I.   Background

Plaintiff Gina M. Kennedy filed her application for a period of
disability and disability insurance benefits on February 15, 2011, and
her application for supplemental security income on March 29, 2011,
alleging that she has been disabled since February 3, 2011.  *PAGEID*
189-202.  The claims were denied initially and upon reconsideration,
and plaintiff requested a *de novo* hearing before an administrative law

judge.

An administrative hearing was held on January 15, 2013, at which plaintiff, represented by counsel, appeared and testified, as did William Braunig, who testified as a vocational expert. *PAGEID* 65-96. In a decision dated February 22, 2013, the administrative law judge concluded that plaintiff was not disabled from February 3, 2011, through the date of the administrative decision. *PAGEID* 46-58.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 22, 2014. *PAGEID* 31-33.

Plaintiff was 38 years of age on the date of the administrative decision. *See PAGEID* 58, 189.  Plaintiff is insured for disability insurance purposes through March 31, 2015. *PAGEID* 48.  Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a dishwasher and housekeeper. *PAGEID* 56.  She has not engaged in substantial gainful activity since her alleged date of onset of disability. *PAGEID* 48.

## II.   Evidence of Record

Plaintiff was consultatively evaluated by Sudhir Dubey, Psy.D., on March 28, 2007. *PAGEID* 347-52.  Dr. Dubey assigned a global assessment of functioning ("GAF") score of 71 and assessed a personality disorder, NOS, and borderline intellectual functioning. *PAGEID* 351.  According to Dr. Dubey, plaintiff had mild limitations in her ability to understand, remember, and follow instructions; to

maintain attention, concentration, persistence, and pace sufficient to perform simple, repetitive tasks; and to withstand stress and pressure associated with day-to-day work activity.  *PAGEID* 351.

Plaintiff has treated with Thomas H. Lee, M.D., for ankle pain. *PAGEID* 623-44.  Plaintiff underwent right ankle surgery in August 2009 and physical therapy following the surgery.  *PAGEID* 634-36, 646-51. Dr. Lee reported in June 2010 that plaintiff was "doing fantastic" and that the "position of the ankle is excellent."  *PAGEID* 623.

In January 2010, after a co-worker of plaintiff had contacted a crisis intervention service with concerns about plaintiff, *PAGEID* 404, plaintiff began treating with Angelia Parsons, MSW, LISW, of Consolidated Care.  *PAGEID* 472.  Ms. Parsons provided individual therapy sessions on a continuing basis.  *PAGEID* 717.

Charles V. Kratz, M.D., began treating plaintiff for depression and anxiety in July 2010, after plaintiff reported being sad, anxious, and stressed and Dr. Kratz observed that plaintiff had been cutting herself.  *PAGEID* 390-91.  In December 2010, plaintiff reported that her medication "work[ed] very good," but that she could not afford to purchase the medication in January 2011.  *PAGEID* 392-93.  Plaintiff overdosed on Klonopin on January 31, 2011, because she felt overwhelmed and thought that the medication would make her feel better.  *PAGEID* 394.  A friend of plaintiff's told Dr. Kratz on February 1, 2011 that plaintiff had deteriorated over the previous three weeks.  Dr. Kratz noted that plaintiff had lost her job, was

3

homeless, and could not afford medication, but that she was receiving help from a friend.  *Id*.

On February 3, 2011, plaintiff presented to St. Rita's Medical Center Emergency Department because she had been feeling very sad, depressed, and hopeless and had thoughts of harming herself. Plaintiff was admitted to the psychiatric floor and was treated by Subrata Roy, M.D., for symptom stabilization and medication adjustment.  *PAGEID* 359.  Dr. Roy diagnosed major depressive disorder, recurrent, a generalized anxiety disorder, and obesity.  *PAGEID* 360. Dr. Roy assessed a GAF of 30 on admission and 50 on discharge.  *Id*. Plaintiff was discharged on February 11, 2011.  *PAGEID* 362.

Plaintiff reported to Dr. Kratz on February 15, 2011 that she "loved it" at St. Rita's.  *PAGEID* 395.  Dr. Kratz noted that "it may be that disability is in [plaintiff's] future as it seems unlikely she's going to be able to effectively hold a job."  *Id*.

Plaintiff reported thoughts of suicide with planned intent to Ann Nash, P.C., at Consolidated Care on February 18, 2011.  *PAGEID* 403.

Plaintiff was again admitted to the psychiatric department of St. Rita's Medical Center on February 20, 2011, with complaints of panic attacks, suicidal ideation, depressed mood, hopelessness, and helplessness.  *PAGEID* 371-74. Plaintiff reported that her condition had improved significantly with medication, and she was discharged on February 26, 2011, with diagnoses of mood disorder, NOS, bipolar disorder depressed, adjustment disorder depressed mood, and obesity.

4

*PAGEID* 371-72.  Plaintiff's GAF was 35 on admission and 50 on discharge.  *Id*.

On March 1, 2011, Dr. Kratz diagnosed bipolar disorder and noted that plaintiff "seem[ed] to be doing pretty good again."  *PAGEID* 396. Dr. Kratz evaluated plaintiff on March 16, 2011, in preparation for plaintiff to move to "A Friend's House," a residential treatment center in Indiana. *PAGEID* 397.  Dr. Kratz assessed significant depression and possible other mental health issues and noted that, "[o]ther than the mental health issues[, plaintiff has] been completely healthy with no other medical problems."  *Id*.

Plaintiff was a resident of A Friend's House from March 30, 2011 through June 29, 2011.  *PAGEID* 470.  During that time, plaintiff participated in groups, helped with chores, and was never a behavior problem.  *Id*.  Plaintiff's advocate noted that plaintiff had a hard time accepting responsibility, would not "do what she needed to do," and asked to leave the program on June 29, 2011.  *Id*.

Plaintiff received medication management at Park Center from April 27 through June 7, 2011, while she lived at A Friend's House. *PAGEID* 427-41.  Plaintiff reported depression, anxiety, mood instability, and a history of suicidal ideation and self-harm.  *PAGEID* 427.  Plaintiff also reported excessive worry and infrequent panic attacks.  *PAGEID* 430.  However, she had not demonstrated suicidal or self-injurious behavior in the previous 30 days.  *Id*.  Plaintiff was assigned a GAF of 54 and was diagnosed with a major depressive

5

disorder, recurrent and moderate; generalized anxiety disorder; and borderline personality disorder.  *PAGEID* 432.

Plaintiff was consultatively evaluated by Sherwin Kepes, Ph.D., on June 14, 2011.  *PAGEID* 448-51.  Dr. Kepes assigned a GAF of 60 and diagnosed a major depressive disorder, recurrent, moderate, with a provisional diagnosis of borderline intellectual functioning.  *PAGIED* 450-51.  Dr. Kepes noted that plaintiff's "understanding of arithmetic is not especially well developed and for anything but basic transactions, she may need supervision in the management of her funds."  *PAGEID* 450.  Dr. Kepes further noted that plaintiff's impulse control appeared to be limited, but that plaintiff "appear[ed] to be more stabilized than what has been reflected in her past records."  *PAGEID* 451.

Joseph A. Pressner, Ph.D., reviewed the record and, on June 22, 2011, completed a psychiatric review technique form and mental residual functional capacity assessment.  *PAGEID* 452-69.  According to Dr. Pressner, plaintiff had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, and pace.  *PAGEID* 462.  Plaintiff was markedly limited in her ability to interact appropriately with the general public and moderately limited in five of 16 areas of functioning related to understanding and memory, sustained concentration and persistence, and social interaction.  *PAGEID* 466-67.  Dr. Pressner opined that plaintiff could

6

perform unskilled tasks and maintain at least superficial contact with coworkers and supervisors.  *PAGEID* 468.

On December 20, 2011, Ms. Parsons diagnosed plaintiff with bipolar I disorder, most recent depressed, moderate; borderline personality disorder; obesity; and high blood pressure.  *PAGEID* 474. According to Ms. Parsons, plaintiff's concentration, memory, and frustration tolerance become significantly limited when she is stressed or experiencing an interpersonal problem.  *PAGEID* 473. Plaintiff's "emotional instability can interfere with her ability to keep appointments, follow instructions, and/or meet financial obligations."  *Id*.  Ms. Parsons noted that plaintiff has had trouble maintaining professional boundaries in the past.  *Id*.

Plaintiff attended group therapy sessions at Consolidated Care throughout most of 2012.  *PAGEID* 478-79, 655-71, 675-722.  In November 2012, plaintiff was described as cooperative, depressed, restless, anxious, loved, hopeful, overwhelmed, upset, and stressed.  *PAGEID* 655-56.

Plaintiff counseled with Julie A Wilcox, M.A., L.S.W., at Consolidated Care approximately once or twice per week from August 2, 2011 through November 28, 2011.  *PAGEID* 480-520.  Ms. Wilcox's goal was to stabilize plaintiff's mood and connect her with community resources.  Ms. Wilcox's notes indicate that plaintiff experienced alternating periods of instability and high stress and periods of stability.  *Id*.  She had not experienced a panic attack in

7

approximately five months when she started having daily panic attacks in October 2011. *PAGEID* 494-95, 521. By October 17, 2011, plaintiff was feeling less stressed and was experiencing fewer panic attacks. *PAGEID* 492. Plaintiff's mood was stable in November 2011 and plaintiff had "no concerns to report" by November 28, 2011. *PAGEID* 483-90. Plaintiff continued counseling with Ms. Wilcox through at least September 2012, and her stress and mood fluctuated throughout that time. *PAGEID* 665-66, 669-74, 709-16. In September 2012, plaintiff reported increased anxiety, but no panic attacks. *PAGEID* 669.

Caroline Lewin, Ph.D., reviewed the record and completed a Mental Residual Functional Capacity Assessment on January 9, 2012. *PAGEID* 108-11. Dr. Lewin opined that plaintiff can perform simple to some moderate routine tasks that do not require fast pace or strict production quotas or significant interactions with others. *Id*.

Plaintiff attended vocational rehabilitation from January through March 2012. *PAGEID* 317-41. Plaintiff's performance in a clerical job working from 9:00 a.m. to 1:00 p.m. met all standards, except for showing initiative. *PAGEID* 331-35. It was noted that plaintiff "has no problem doing clerical type work, once shown how to, and she has a friendly personality." *PAGEID* 335. Plaintiff's supervisor commented that she would hire plaintiff "because she catches on fast" and met standards and expectations; her supervisor saw no areas in which plaintiff would need major improvement. *Id*.

8

Plaintiff continued to treat with Dr. Kratz for physical and mental problems.  *PAGEID* 605-21.  Dr. Kratz evaluated plaintiff on November 9, 2011, after she had overdosed on medication the previous day.  *PAGEID* 618.  According to Dr. Kratz, plaintiff had not planned to harm herself and her overdose was impulsive.  *Id*.  He diagnosed hypertension (well controlled), depression, and social upheaval.  *Id*.

On July 11, 2012, Dr. Kratz completed a physical capacity evaluation and mental residual functional capacity questionnaire.  *PAGEID* 526-31.  On the physical capacity evaluation, Dr. Kratz opined that, in an eight hour workday, plaintiff could stand for four hours (60 minutes at one time), walk for four to six hours (120 minutes at one time), and sit for eight hours (120 minutes at one time).  *PAGEID* 527.  Plaintiff could lift 11-20 pounds occasionally and could occasionally squat, crawl, climb steps, and climb ladders.  *PAGEID* 527-28.  Accordin to Dr. Kratz, plaintiff's condition would likely deteriorate if she were placed under stress, particularly the stress of a job; she would likely have five or more unscheduled absences from work per month due to her impairments.  *PAGEID* 528.  Dr. Kratz indicated that plaintiff was "physically disabled only do [sic] to weight."  *Id*.  He also noted that plaintiff "is really mostly disabled from a depression/mental health standpoint which I feel very much limit her!"  *Id*.

On the mental residual functional capacity evaluation, Dr. Kratz opined that plaintiff was moderately limited in 13 of 16 areas of

9

functioning related to social interaction, sustained concentration and persistence, and adaptation; she was markedly limited in the remaining three categories.  *PAGIED* 529-31.  Dr. Kratz again opined that plaintiff's condition would likely deteriorate if she were placed under stress, particularly the stress of a job, and that she would likely have five or more unscheduled absences from work per month due to her impairments.  *PAGEID* 531.  Dr. Kratz noted that this "has occurred multiple times in past.  She has significant depression [and] mental illness [and] stress tends to ruin her stability."  *PAGEID* 531.

Ms. Nash completed a mental residual functional capacity questionnaire on July 20, 2012.  *PAGEID* 533-35.  Ms. Nash opined that plaintiff had marked limitations in 13 of 16 areas of functioning related to social interaction, sustained concentration and persistence, and adaptation; she had moderate limitations in the remaining three categories.  *Id*.  Ms. Nash also opined that plaintiff's condition would likely deteriorate if she were placed under stress, particularly the stress of a job, and that she would likely have five or more unscheduled absences from work per month due to her impairments.  *PAGEID* 535.  Ms. Nash noted plaintiff's report that "stress has increased negative emotions and impulsive behaviors." *Id*.

Tracy Detwiler, a physician's assistant at Consolidated Care, completed a mental residual functional capacity questionnaire on October 1, 2012.  *PAGEID* 654-55.  The questionnaire appears to be

10

missing a page; on the two pages provided, Ms. Detwiler opined that plaintiff was markedly limited in all five areas of functioning related to social interaction and adaptation. *Id*. Plaintiff's condition would likely deteriorate if she were placed under stress, particularly the stress of a job, and that she would likely have five or more unscheduled absences from work per month due to her impairments. *PAGEID* 654. Ms. Detwiler noted that "stress is a trigger for [plaintiff's] [diagnosis]. Easy to become overwhelmed [with] meeting the demands of a buss. or working in large groups." *Id*.

On December 31, 2012, Ms. Parsons prepared a narrative report outlining her treatment of plaintiff since 2010. *PAGEID* 744-45. Ms. Parsons noted, *inter alia*, that plaintiff's "anxiety and inability to regulate her emotions were producing frequent reports of panic attacks" during the fall of 2011. *PAGEID* 745. Plaintiff had been attending group counseling sessions on a weekly basis since December 2011 and was seen in individual therapy every one to two weeks. *Id*. Ms. Parsons noted that plaintiff has been free of self-injury since she started counseling sessions. Ms. Parsons concluded that plaintiff "continues to have great difficulty managing her personal health, employment, and housing and continues to require significant support to help her in the area of developing independence." *Id*.

11

### III. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of affective disorder, anxiety-related disorder, personality disorder, borderline intellectual functioning, sleep apnea-induced fatigue, obesity, and ankle pain related to prior surgeries. *PAGEID* 48. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to perform work

> that involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds; pushing or pulling similar amounts; sitting, standing, and walking for 6 hours each; no more than frequent postural activity; no more than occasional interaction with supervisors, coworkers, and the public; no more than simple, routine, repetitive tasks without production quotas.

*PAGEID* 49-51. Relying on the testimony of the vocational expert, the administrative law judge found that this RFC does not preclude the performance of plaintiff's past relevant work as a dishwasher and housekeeper. *PAGEID* 56. The administrative law judge also relied on the testimony of the vocational expert to find, alternatively, that plaintiff is able to perform a significant number of jobs in the national economy, including such jobs as laundry laborer, dining room attendant, and janitor. *PAGEID* 56-57. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from February 3, 2011, through the date of the administrative decision. *PAGEID* 58.

12

**IV.   Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the
Commissioner's decision is limited to determining whether the findings
of the administrative law judge are supported by substantial evidence
and employed the proper legal standards.  *Richardson v. Perales*, 402
U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595
(6th Cir. 2005).  Substantial evidence is more than a scintilla of
evidence but less than a preponderance; it is such relevant evidence
as a reasonable mind might accept as adequate to support a conclusion.
*See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y
of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This
Court does not try the case *de novo*, nor does it resolve conflicts in
the evidence or questions of credibility.  *See Brainard v. Sec'y of
Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v.
Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this
Court must examine the administrative record as a whole.  *Kirk*, 667
F.2d at 536.  If the Commissioner's decision is supported by
substantial evidence, it must be affirmed even if this Court would
decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d
1058, 1059 (6th Cir. 1983), and even if substantial evidence also
supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff contends, *inter alia*,
that the administrative law judge improperly evaluated the medical

13

evidence of record.  Although plaintiff specifically argues that the

administrative law judge erred in evaluating the opinions of a number

of acceptable medical sources and other sources, *see Statement of*

*Errors*, pp. 10-22, the Court concludes that the matter must be

remanded for further consideration of plaintiff's treating provider,

Dr. Kratz.

The opinion of a treating provider must be given controlling

weight if that opinion is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques" and is "not

inconsistent with the other substantial evidence in [the] case

record."  20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).  Even if the

opinion of a treating provider is not entitled to controlling weight,

an administrative law judge is nevertheless required to evaluate the

opinion by considering such factors as the length, nature and extent

of the treatment relationship, the frequency of examination, the

medical specialty of the treating physician, the extent to which the

opinion is supported by the evidence, and the consistency of the

opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c)(2)-(6);

416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406

(6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th

Cir. 2004).  Moreover, an administrative law judge must provide "good

reasons" for discounting the opinion of a treating provider, *i.e.*,

reasons that are "'sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating

14

source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Kratz has treated plaintiff since at least 2008, *PAGEID* 382-83, and started treated her for depression and anxiety in July 2010. *PAGEID* 390-91.  Dr. Kratz treated plaintiff for physical and mental ailments through 2012.  *PAGEID* 605-21.  On February 15, 2011, Dr. Kratz noted that "it may be that disability is in [plaintiff's] future as it seems unlikely she's going to be able to effectively hold a job."  *PAGEID* 395.

On July 11, 2012, Dr. Kratz completed a physical capacity evaluation and mental residual functional capacity questionnaire. *PAGEID* 526-31.  On the physical capacity evaluation, Dr. Kratz opined that, in an eight hour workday, plaintiff could stand for four hours (60 minutes at one time), walk for four to six hours (120 minutes at one time), and sit for eight hours (120 minutes at one time).  *PAGEID* 527.  Plaintiff could lift 11-20 pounds occasionally and could occasionally squat, crawl, climb steps, and climb ladders.  *PAGEID*

15

527-28.  Dr. Kratz further opined that plaintiff's condition would likely deteriorate if she were placed under stress, particularly the stress of a job, and that she would likely have five or more unscheduled absences from work per month due to her impairments. *PAGEID* 528.  Dr. Kratz indicated that plaintiff was "physically disabled only do [sic] to weight."  *Id*.  He also noted that plaintiff "is really mostly disabled from a depression/mental health standpoint which I feel very much limit her!"  *Id*.

   In his mental residual functional capacity evaluation, Dr. Kratz opined that plaintiff was moderately limited in 13 of 16 areas of functioning related to social interaction, sustained concentration and persistence, and adaptation, and markedly limited in the remaining three categories.  *PAGIED* 529-31.  Dr. Kratz again opined that plaintiff's condition would likely deteriorate if she were placed under stress, particularly the stress of a job, and that she would likely have five or more unscheduled absences from work per month due to her impairments.  *PAGEID* 531.  Dr. Kratz noted that this "has occurred multiple times in past.  She has significant depression [and] mental illness [and] stress tends to ruin her stability."  *PAGEID* 531.

   The administrative law judge categorized Dr. Kratz as a treating source and evaluated his opinions as follows:

> Ann M. Nash, Ph.D.[1] and Dr. Kratz receive little weight for
> their treating opinions that the claimant would likely miss
> more than five days per month due to mental impairments.

---

[1] The administrative law judge mistakenly referred to Ms. Nash as having a Ph.D.  *Compare PAGEID* 25 *with PAGEID* 505.

(Exhibits 14F/6, 15F/4).  The opinions, which were made in July 2012, appear to contradict improvement from that same period.  Only one month earlier, reports show that the claimant had experienced no panic attacks.  (Exhibit 30F/78).  The opinions also contradict Ms. Parsons, who described the claimant as free of self-harm behavior since December 2011.  (Exhibit 31F/3).  Dr. Kratz also receives little weight for his opinion that the claimant will not be able to hold a job.  (Exhibit 4F/14).  The determination of disability is an issue reserved to the commissioner under 20 CFR 404.1527(e) and 416.927(e).  The undersigned still considered the position of Dr. Kratz as a treating source, but the opinion conflicts with vocational rehabilitation evidence that shows the claimant's acceptable performance in a workplace-like setting.  (Exhibit 17E).

With regard to the claimant's physical impairments, the undersigned grants little weight to the treating opinion of Dr. Kratz that the claimant cannot stand or walk for six hours per workday.  (Exhibit 14F/2).  The doctor also opined that the claimant could not lift more than 20 pounds.  (Exhibit 14F/2).  Neither statement is supported with medical evidence.  Instead, treating notes from Dr. Lee show that the claimant's ankle impairment had improved to "fantastic" levels by June 2010.  (Exhibit 28F/2).  There are no other severe impairments on which to base the exertional limitations.

*PAGEID* 55.

Plaintiff argues that the administrative law judge erred in evaluating Dr. Kratz' physical capacity evaluation and mental residual functional capacity questionnaire.  As to Dr. Kratz' opinion regarding plaintiff's physical limitations, plaintiff argues that the administrative law judge improperly found that the opinion was inconsistent with Dr. Lee's treatment notes and failed to evaluate plaintiff's obesity.  *Statement of Errors*, pp. 23-25.  The Commissioner responds that

the ALJ considered whether Plaintiff had any physical limitations.  In doing so, the ALJ evaluated Dr. Kratz's

> July 2012 opinion (Tr. 25). The ALJ concluded that Dr.
> Kratz's opinion was only entitled to little weight because
> it was inconsistent with the medical evidence (Tr. 25).
> The ALJ explained that Thomas H. Lee, M.D., the physician
> who performed Plaintiff's ankle surgery, indicated that her
> ankle impairment had improved to "fantastic" levels by June
> 2010 (Tr. 25, citing Tr. 592).  Since there were no other
> physical impairments that would explain Dr. Kratz's
> exertional limitations, the ALJ explained that his opinion
> was only entitled to little weight (Tr. 25).

*Commissioner's Response*, p. 8.

The administrative law judge discounted Dr. Kratz' July 2012 physical capacity evaluation because it was inconsistent with evidence related to plaintiff's severe ankle impairment related to prior surgeries. *See PAGEID* 55.  In doing so, the administrative law judge found that "[t]here are no other severe impairments on which to base the exertional limitations." *Id*.  This finding is inconsistent with Dr. Kratz' opinion that plaintiff's physical limitations are based on her obesity, *PAGEID* 528, a condition that the administrative law judge included in plaintiff's severe impairments. *PAGEID* 48.  Under these circumstances, the Court cannot say that the administrative law judge provided good reasons for discounting Dr. Kratz' opinion.

Accordingly, the Court concludes that the matter must be remanded for further consideration of the opinions of Dr. Kratz. Having concluded that this action must be remanded on this basis, the Court does not address plaintiff's remaining arguments.

It is accordingly **RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g)

and that this action be **REMANDED** to the Commissioner of Social Security for further consideration of Dr. Kratz' opinions.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

_s/Norah McCann King_____
Norah M<sup>c</sup>Cann King
United States Magistrate Judge

January 26, 2015